**LAW OFFICES OF**

**DONNA R. NEWMAN**

**ATTORNEY AT LAW**
**20 VESEY STREET, SUITE 400**
**NEW YORK, NEW YORK 10007**
**TEL. 212-229-1516**
**FAX 212-676-7497**
**DONNANEWMANLAW@AOL.COM**
**MEMBER: N.Y. & N.J. BAR**

June 17, 2024

Hon. Edgardo Ramos
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

*United States v. Jose Cesari,* 24 Cr 154-1 (ER)

Dear Judge Ramos:

The Government has appealed Magistrate Judge Barbara Moses's June 13, 2024, order granting Mr. Cesari pretrial bond on restrictive conditions including, *inter alia*, home detention and travel limited to the Southern District of New York. See Government Letter Motion dated June 17, 2024, Dkt. # 55 ("Gov't Ltr")[1]. Of significance, the conditions ordered mirrored the conditions recommended by pretrial services officer in the SDNY.

The Government's motion, a "second bite of the apple," fails because, although the Government has added "color" to the evidence proffered to Magistrate Judge Moses, they have still failed – as Judge Moses found at the bond hearing on June 14th -- to meet their burden to establish that the conditions of pretrial release Judge Moses imposed would not reasonably assure Mr. Cesari's presence in court and/or the safety of the community.

The Government admits that their June 17 letter offers this Court evidence not presented to Judge Moses. See Gov't Ltr at 8-13. Accordingly, this is not an appeal, and  accordingly, the Government is not asking for *de novo* review of the Magistrate's decision but rather seeks an entirely different bond hearing. We suggest this is an attempted end-run around its initial failure to meet its statutory burden now that the Government has realized it needs a more persuasive presentation to make its pitch for detention. But the "new" evidence that the Government offers in its June 17 letter, as discussed below, is not evidence that was unavailable to the Government at the initial bond hearing nor is it evidence that this Court should consider.

---

[1] Attached to the Government letter as Exhibit A is the transcript of the bond hearing before Magistrate Judge Moses. The transcript is referenced herein as "Tr. " at page number of transcript as provided in government exhibit.

Mr. Cesari was detained in Puerto Rico since April 4th and as the Government advised counsel and the Magistrate, it was always their intent to seek Mr. Cesari's detention. The Government had ample time to prepare a fulsome presentation and provide the Magistrate with the arguments and evidence that they now proffer to this Court. The Magistrate gave them ample opportunity to do so.

For this reason, this Court should not entertain any of the "new" evidence the Government now offers to this Court. To the extent the Court believes the "new" evidence has some bearing on the question of bond, the Court should send the matter back to Magistrate Moses for her consideration in the first instance.

But moreover, as discussed below, neither the evidence presented to Magistrate Moses nor the new evidence offered by the Government in its instant motion is sufficient to deny Mr. Cesari bond under the combination of conditions imposed by Magistrate Moses. The Court should deny the Government's appeal and affirm Judge Moses's pretrial release order.

**Applicable Law**

When a defendant is charged with committing a firearms offense under 18 U.S.C. § 924(c), "subject to rebuttal by the person, it shall be presumed that no condition or combinations will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C.§ 3142(e)(3)(B). "In a presumption case . . . , a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "[T]he government retains the ultimate burden of persuasion by clear and convincing evidence that [a] defendant presents a danger to the community," and "by the lesser standard of a preponderance of the evidence that a defendant presents a risk of flight." *Mercedes*, 254 F.3d at 436. If the Government successfully demonstrates that a defendant is either a danger to the community or a risk of flight, it must then prove by a preponderance of the evidence that there are no conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial and/or the safety of the community if he is released. *Id.*

To determine whether the defendant has rebutted the presumptions of dangerousness and flight, the Court considers the four factors listed in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the Defendant; (3) the defendant's history and characteristics, such as his family ties, employment, community ties, and past conduct; and (4) the nature and seriousness of the danger to the community or to an individual that the defendant's release would present. *Mercedes*, 254 F.3d at 436. Section 3142 does not speak to the weight that should be given to each factor. See *United States v. Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022). Courts have concluded that the weight of the evidence is considered the least important" of the § 3142(g) factors. See *United States v. Fox,* 602 F.Supp.3d 434, 441 (W.D.N.Y. 2022) (citing *United States v. Parker*, 65 F.Supp.3d 358, 365 (W.D.N.Y. 2014)), *aff'd,* No. 22-1043, 222 WL 2564600 (2d Cir. July 8, 2022)). The district court in *Fox* explained that placing a heavy hand on the detention scale based on the weight of the evidence is troublesome "because it is inherently difficult to assess the Government's case before trial" and

because  "a defendant must be presumed innocent." *Id*. (citing *Parker*; *United States v. Fama,* No. 13 cr 234, 2013 WL 2467985, at \*3 S.D.N.Y June 7, 2013)).

Accordingly, because the plain language of § 3142(g) does not suggest that one factor matters more or less than another, the relative importance of any or all the factors depends on an individualized assessment and differs as to each defendant even within the same case. See *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010); *United States v. Hir*, 517 F.3d 1081, 1091 n.8 (9th Cir. 2008) ("each case requires a fact-specific inquiry into the potential danger posed by the individual defendant"); *United States v. Patriarca,* 948 F.2d 789, 794 (1st Cir. 1991) (rejecting government's argument that because defendant is alleged member of the same organized crime family as the other defendants who were detained, this defendant must be detained).

*De novo* review requires that the court  "give fresh consideration to those issues to which specific objections have been made." *United States v. Vasoncellos,* 519 F.Supp.2d 311, 314 (N.D. N.Y., 2007)(citing *United States v. Raddatz,* 447 U.S. 668, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424(1980)(remainder of citations omitted).  A Court conducting a *de novo* review of  Magistrate court's pretrial release determination "will examine the entire record and make an independent assessment of the magistrate judge's factual and legal conclusions." *Id.* Although a district court, may at its discretion consider new evidence, the parties have no right to submit evidence and arguments not presented to the magistrate. Offering new evidence in a *de novo* review is frowned upon as inappropriate. See, *Id*. (citations omitted).

In *United States v Flores*, the District Court held that "[b]asic notions of fairness work to preclude the reopening of a judicial detention/release decision unless the party can demonstrate, at the least, good cause for the failure to initially present the evidence." *United States v. Flores*, 856 F.Supp. 1400, 1405 (E.D.Cal 1994). Repeated detention hearings based on the Government's failure to marshal its evidence for detention before the arrest and to present adequate evidence at the initial hearing are disfavored. As the district court in *Flores* warned, "when the government makes repeated motions for detention because it has initially failed to present evidence that was readily obtainable, the process appears 'stacked' or 'rigged.' The government should not be allowed to schedule seriatim hearings for detention until it 'gets it right.'" *Flores*, 856 F. Supp. at 1406 (footnote omitted). Repeated detention hearings also "create considerable expense for the defendant both in terms of resources and emotional stress. In the event that counsel is appointed for the defendant, the taxpayer is made to pay double for the non-diligence of the government in failing to acquire and present readily obtainable evidence for the first hearing." *Flores*, 856 F. Supp. at 1406–07.

Further, the Court should avoid unnecessary pretrial detention. Generally, "statistics show that pretrial supervision provides a safe and cost-effective alternative to pretrial detention." As an example, a recent study found that "less than one percent of the defendants released to supervision were revoked due to a felony re-arrest and fewer than one percent failed to appear in court as direct. Even Technical violations… were low at 12 percent."[2]  The cost of pretrial

---

[2] Summary of the Report of the Judicial Conference Committee on Criminal Law, Agenda E-7, September 2012, Appendix at 3 ("CLC Report") (2017)

supervision is substantially lower than the cost of pretrial detention.[3] Moreover, pretrial detention may have a significant impact on the outcome of the case. Research indicates that pretrial detention is itself associated with increased likelihood of a prison sentence and with increased sentence length.[4] On the other hand, pretrial release increases the likelihood of not being sentenced to prison and is associated with a decrease in sentence length.[5]

In a 2022 comprehensive report published by the University of Chicago Law School (based on extensive research conducted in collaboration with the law school's federal criminal justice clinic) found the following:

> High pretrial detention rates also fly in the face of overwhelming evidence demonstrating that pretrial jailing does not advance its stated purpose of ensuring appearance and community safety. **Although federal judges may believe that detaining more arrestees will ensure community safety, evidence shows that pretrial detention is instead criminogenic, harming individuals and imposing additional costs on society.** A series of studies has proven that even short-term detention increases the likelihood of reoffending by more than 25%.[6] These data cast significant doubt on the notion that pretrial detention curbs criminal activity and benefits society. Rather, as one United States District Court judge has observed, "Mass detention creates mass incarceration." (citing Judge James G. Carr, *Why Pretrial Release Really Matters*, 29 Fed. Sent G'Rep. 217, 220 (2017)). (emphases in original).

Alison Siegler, "Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis," Univ. Chicago Law School Fed. Crim. Justice Clinic, Oct. 2022 (available at: https://freedomdenied.law.uchicago.edu/report.


**Discussion: The Government's Arguments Fail to Demonstrate that Magistrate Mose's Bond Determination was Factually or Legally Error Or That A Combination of Conditions, Reasonably Assure Defendant's Attendance In Court or the Safety of the Community**

---

[3] *Guide to Judiciary Policy,* Vol 88, "alternatives to Detention and Conditions of Release" (Monograph 110) at § 150("by imposing conditions of release and alternative to detention, judicial officers are able to promote the responsible use of public funding to protect the rights of defendants and to reasonably assure the appearance of the defendant and the safety of the community as required").

[4] James C. Oleson, Christopher T. Lwenkamp, John Wooldredge, Marie VanNostrand, and Timothy P. Cadigan, *The Sentencing Consequences of Federal Pretrial Supervision,* 63 Crime 7 Delinquency, 313, 325 (study of 90,037 federal defendants during FY 2011).

[5] *Id.*

[6] Erica Zunkel & Alison Siegler, *The Federal Judiciary's Role in Drug Law Reform in an Era of Congressional Dysfunction*, 18 ohio ST. J. Crim. 283, 306 (2020) (quoting Christopher L. Lowenkamp et al., *The Hidden Costs of Pretrial Detention*, Arnold Found. 19 (2013), https://craftmediabucket.s3.amazonaws.com/uploads/PDFs/ LJAF_Report_hidden-costs_FNL.pdf [https://perma.cc/FE39-BR7E]).

The Government's principal arguments are that the weight of the evidence against Mr. Cesari is determinative of the bail decision and that Magistrate Moses failed to adequately consider Mr. Cesari's past record and the weight of the evidence against Mr. Cesari as proffered by the Government. See Gov't Ltr. at 8. Both arguments are incorrect.

In the first instance, the Magistrate correctly discounted the Government's self-serving assessment of Pretrial Services' recommendation for bond and the Government's assertion that because it did not seek detention with respect to the other defendants its decision to seek bond should be given credit. See Tr. at 14-15; see also Tr at 15 (Judge Moses: "we look at each case individually"); See, e.g. *Zhang,* 55 F.4th at 149. The Court then correctly framed the issue presented as being whether the Court could impose conditions of release that would make sure Mr. Cesari doesn't commit any more beer robberies while on pretrial release. See Tr. at 19.

Magistrate Moses allowed the Government all the time they sought to present evidence of their basis for detention. See e.g. Tr. at 14-19, 24-31, 60-61. While, in its June 17 letter, the Government provides Instagram videos and social media posts not provided in its initial presentation at the June 13 hearing, the evidence the Government proffered to the Magistrate regarding the charged offense conduct was essentially the same. Indeed, the Government concedes this. See Gov't Ltr at 8 (citing to Tr. at 14-19, 24-25).

Similarly, the Magistrate Judge carefully considered Mr. Cesari's prior arrests, including his state court arrest for a similar charge, but recognized that Mr. Cesari had entered a plea to a reduced charge that was minor. See Tr. at 2021, 54-55. She also considered the weight of the evidence as proffered by the Government as well as the Government's proffer of the outstanding warrants.[7] See Tr. at 55; 61-62. After careful and through consideration of this proffer of evidence, the Court correctly found that the strict conditions of pretrial release ameliorated the risk of flight and danger to the community. See tr. at 56-61.

Notably, the Government advised the Court that since Mr. Cesari's arrest there have been no beer thefts because, as the Court observed all the participants, including Mr. Cesari, are arrested. See Tr. at 18. By the same logic, however, the other defendants are released on bond, not remanded. Thus, if Mr. Cesari is under home detention, under the Government's logic, there likewise will be no additional thefts. The Court also took note that where Mr. Cesari will reside in the Bronx is not in a location where the thefts occurred. See Tr. at 24.

The Government concedes it cannot state that Mr. Cesari was involved in all the beer thefts that are alleged to have occurred. See Tr. at 25. Likewise, although the Government claims that Mr. Cesari has great wealth, (see Gov't Ltr at 4), the Government cannot substantiate this claim and, indeed, the evidence is otherwise. After a thorough search of Mr. Cesari's residence, neither money nor any evidence of "great wealth" was found. The Government does not allege that Mr. Cesari owned a vehicle, or property or even jewelry indictive of his having money let

---

[7] We note that the Government misstated Mr. Cesari's criminal history. He does not have 5 open cases and the warrant from Amsterdam New York, as clarified by Defense counsel at the hearing and confirmed now by the Government- was for a non-violent charge-misdemeanor and for a violation of harassment; see also Gov't Ltr at 11.

alone "great wealth."  Rather the Government claims that Mr. Cesari is hiding money because he chose not to tell Pretrial Services if he had a bank account. See Gov't Ltr at 4.  Mr. Cesari submits this is an inaccurate account of the exchange between himself and the pretrial officer in Puerto Rico. Mr. Cesari indicated to counsel that he didn't refuse. He said that he does not have a savings or checking account, which is exactly what he stated under oath in his financial affidavit in this district. In this district, under oath, Mr. Cesari swore to the contents of his financial affidavit and stated he did not have bank accounts or assets.

Mr. Cesari (despite his great "wealth") works long hours to help his step-grandfather in the Bodega for which he receives a minimal amount of money. It is true that he said he was unemployed because he understood that employment must be on the books. Counsel has confirmed with his grandfather that Mr. Cesari worked at the Bodega but off the books. This was explained to the Magistrate at the bond hearing. See Tr. at 44.  He paid for his trip to Puerto Rico with funds obtained from his step-grandfather for  his work in the Bodega.

Further, while where Mr. Cesari alleged hidden money is located remains a secret (the Government's secret it appears), we do know that money was not found under his mattress or under his pillow, or elsewhere in his home. See Gov't Ltr at 9 (itemizing the various items found in residence).[8] Neither money nor any evidence of wealth was found in the apartment. Besides Mr. Cesari's puffing on Instagram in what the Government claims was his attempt to recruit others, there is no concrete evidence that Mr. Cesari has funds that he could use to "run." Detention on this ground cannot be justified.

Evidence of Mr. Cesari's danger to the community is likewise underwhelming. As the Magistrate observed, the evidence regarding Mr. Cesari's use of a weapon is not overwhelming. See Tr. at 55)(accepting the weight of the evidence as to the Hobbs Act robberies but finding the evidence of his use of a weapon not as strong) . The Government's evidence is simply that the train conductor explained that an individual fitting Mr. Cesari's physical description was the perpetrator. See Gov't Ltr. at 5.  What that description is or how it may also apply to many others, including the others present is not disclosed.  And it is certainly open to debate whether an Adidas track jacket with three stripes, etc., can be described as "distinctive." See Gov't Ltr at 5. In any event, the wearer of the jacket is not tied to the same individual who is alleged to have displayed a weapon. Others had to be present at the April 21, 2021, robbery. Again, a search of the residence did not turn up a weapon or ammunition or anything related to the use of a weapon.

We also suggest the Government exaggerates when it states that Mr. Cesari is the ring-leader of that the instant charged conspiracy is an enterprise. The evidence may suggest Mr. Cesari attempted through a great deal of salesmanship to recruit others (although we do not concede this) but it does not show he orchestrated the entire conspiracy, including the distribution of the beer-which may well have been spoiled .

---

[8]Notably, the Government has not provided a return of the warrant providing a listing of the items seized, nor a warrant authorizing the search and seizure for the items the Government claims were seized. See Gov't Ltr. at 9-10.

Based on the evidence offered at the bail hearing Magistrate Judge Moses correctly concluded that the restrictive conditions of bond, which not only included GPS monitoring, home detention but the signature of two suretors, and travel restricted to SDNY would reasonably assure Mr. Cesari's presence in court and the safety to the community. The decision should be upheld.

**The Government's Proffer of "New" Evidence Does Not Alter the Correctness of Magistrate Judge Moses' Conclusion.**

The Government argues that home detention even with electronic monitoring is not an effective condition of release. See Gov't Ltr at 9-10. This generalization is incorrect as the research and academic research demonstrates that "less than one percent of the defendants released to supervision were revoked due to a felony re-arrest and fewer than one percent failed to appear in court as direct. Even Technical violations… were low at 12 percent." See, fn. 2.

The Government's analysis as to Mr. Cesari is likewise incorrect and flawed. His use of police scanners, if accurate, demonstrates only a desire to avoid detection in the course of committing a crime, not that he could not follow court-ordered conditions of release. See Govt Ltr at 9.  When sentenced to probation in 2020, he concluded probation without incident. He appeared at all court proceedings.

The Government misleads the Court regarding Mr. Cesari's outstanding warrants. Neither of these warrants derive from his failure to appear at a scheduled court proceeding. Rather these warrants issued, in each case, upon the filing of a complaint. With respect to the Amsterdam, New York case, which involves two misdemeanor allegations, including menacing (see Gov't Ltr at 11), Mr. Cesari was unaware of this case, had resided at his grandmother's residence since the warrant issued more than two years ago and has been in other courts and yet no one came to arrest him. It goes without saying that police reports are not always an accurate recitation of the events. This warrant is not a basis to conclude that Mr. Cesari would not appear at all court conferences or that he is a danger to the community if under home detention with GPS monitoring. Importantly, no weapon was found at the residence -- not even the alleged knife which the alleged "victim" claimed was used.

The Essex County case is likewise not a reason to detain Mr. Cesari. Mr. Cesari was not served with a copy of this complaint and furthermore, Mr. Cesari was in jail in Puerto Rico when the warrant issued on April 3rd, 2024. The Government is disingenuous by suggesting that Magistrate Moses did not consider this warrant in reaching her bond decision. See Tr. at 61. Indeed, she heard the Government out but said, "if Essex County is interested in finding Mr. Cesari, he will be at his Grandmother's home." Tr. at 62.  It should be noted that, as a condition of bond, Mr. Cesari must immediately address these two outstanding warrants, which will be done immediately upon his release.

The Government also seems to forget the presumption of innocence. And while the Government may offer proffers at a bond hearing, its ability to offer a reliable proffer on cases in which it is not involved and about which it has limited to no information must be viewed as suspect. A complaint of theft is not the same as conviction. There is no reason to conclude that

Mr. Cesari will not appear in Essex County to answer this complaint. In addition, since I am admitted in New Jersey, I will assist him in this process.

The Government's allegation concerning Mr. Cesari's veiled threats, which do not involve any actual incident, and which occurred over two years ago, likewise do not provide a basis to find that home detention with GPS monitoring would inadequately assure the safety of the community.

**The Government's Additional Evidence of the Risk of Nonappearance Is Unpersuasive.**

The Government now offers three reasons why home detention and GPS monitoring are not sufficient to reasonably assure Mr. Cesari's presence at all court appearances. None are persuasive. Furthermore, this offer of new evidence should be rejected. The government was given ample opportunity to present its case to the Magistrate, was aware of the evidence now offered as new evidence. The Court should reject this attempt by the Government to evade the limitations of *de novo*. See *Vasoncellos,* 519 F.Supp.2d at 314. Nonetheless, even considering the "new evidence" the Government has failed to meet its burden that either Mr. Cesari is a danger to the community or a risk of flight or that a combination of bond conditions as imposed (or this Court will impose) do not reasonable assure his attendance in court or the safety of the community.

First as "new' evidence the Government points to the evidence seized from the search of the residence where Mr. Cesari resides with his sister, grandmother and stepfather. Inasmuch as other reside at the residence, the presence of several electronic devices in the home has limited evidentiary value. The other evidence seized, according to the Government claims is further evidence of Mr. Cesari involvement in the offenses charged (except notably for the 924(c ) charge which is the charge upon which the presumption is premised). Thus, once again the Government is basing its argument solely on the weight on the evidence to the exclusion of the other evidence. This simply is not the criteria to apply to determine detention. See, *Fox,* 602 F.Supp.3d at 441. This other evidence is seized and can't be used. See Gov't Ltr. at 9.

Second, the Government claims that Mr. Cesari has a history of evading arrest and thus, presents a danger of non-appearance. See Gov't Ltr. at 12. The Government fails to understand that avoiding arrest while committing a crime is far different than failing to obey a bond condition. The two are not compatible and the Government's analysis fails.

Third, the Government, agrees that Mr. Cesari did self-surrender but not for several hours. See Gov't Ltr at 12. Mr. Cesari spoke with the agents who were at his grandmother's apartment not once but twice. He advised that he intended to surrender but asked them to allow him an hour or two as he wanted to at least see his ailing relative which was in part the reason for his trip to Puerto Rico. He does not agree it took him 14 hours to appear at the police station but does agree it took the police in Puerto Rico a while to process his arrest warrant. In any event, at the very moment when he could have escaped and used all his "wealth" to escape, he did not. He has no wealth. He spent over two months in Puerto Rico awaiting his transfer to New York. The Government claim that Mr. Cesari thought about fleeing while in Puerto Rico is inaccurate and improper.

Finally, we note that close family members have stepped forward as suretors for Mr. Cesari. Mr. Cesari loves his family and his girlfriend. He would never expose them to the financial devastation that would ensue if he were to flee. He would not harm them in such a manner. These are individuals who have significant moral suasion besides being financially responsible suretors. Mr. Cesari is a life-long resident of this community. His criminal history of relatively minor offenses and the fact that he was on a long-planned trip to Puerto Rico when indicted in this case do not make him either a risk of flight or a danger to the community. Magistrate Judge Moses did not err either factually or legally in her determination that the conditions of bond she imposed would reassure Mr. Cesari's appearance in court and the safety of the community. The Government's appeal should be denied and Mr. Cesari should be continued on bond.

Respectfully submitted,
/s/
Donna R. Newman
Cc: AUSA Joseph H. Rosenberg
    AUSA Adam Z. Margulies
    Jose Cesari had delivered